Madam Clerk, please call the next case. 115-2300, J. Noonan v. Chicago. Good morning. May it please the Court. My name is Mark Schechter. I represent Plaintiff Carrie Noonan v. Mieta. Mr. Noonan was injured back in March of 2008 while he was performing duties of a desk job nature. Mr. Noonan had previously been a motor truck driver who was permanently disabled from a previous injury, and he was placed in a position of a clerical nature to fill out truck forms. It was in that capacity that he sustained the injury. So everything's going along fine. Nobody's complaining about anything. The claimant drops his pen to the floor, he moves the rolling chair, and allegedly the chair went out from underneath him. Is that sort of what happened? Well, what happened was he was filling out a form as he was required to do. I guess he handled the forms regarding routing of trucks and what they were supposed to do. He got up to get another form, sat back down. As he sat back down, his elbow nudged his pen. His pen rolled off the desk. He leaned over while he was sitting in his chair to pick up the pen. Tipped the chair over, fell onto his wrist, sustained the injury. I think what you're going to get asked is how does the act of picking up the pen from the floor, how is that incidental to his job? Well, the pen is used to complete his job. He needs that pen to perform his duties. Without that pen, he cannot perform his duties. So is every employee everywhere in any office whose pen falls on the floor, if they get hurt picking up a pen or a paper clip, it's compensable? If it's used in furtherance of their duties, I would say yes. Now, if they're using their pen to fill out a crossword puzzle at their desk or some other personal activity, sure. I would say that there's a risk no greater than that of the general public. But if it is used as a method to complete your tasks, then I think it does bring the pen. Doesn't the general public use pens, too? It does. I use a pen, too. However, if I'm doing work with that pen... So if your pen falls on the floor at a council table and the chair slips out, is that compensable? If I'm doing work related to my employment, I would say that it would be. And the commission, I felt, spent too much emphasis not on the act of using the pen, but on the fact that the chair didn't have a defect, that the floor... There was no testimony that the floor was uneven or slippery or whatever. And instead of focusing on what Mr. Newton was doing at the time of the accident. That is our contention, that it was a risk peculiar to his employment. I want to ask about the procedural path here. Arbitrator filed against a claimant. The commission affirmed and adopted the arbitrator's decision. The circuit court reversed and remanded for the commission to enter an award for the claimant. The commission basically says no. Correct. Maintains its original decision. Goes back to the circuit court for judicial review. And the circuit court says, hmm, I guess I was wrong the first time. My first decision was an error and essentially attempted to void its first order. Is that what you're saying? That's exactly what happened. Judge Lopez-Sapiro remanded the matter. And initially when he remanded it, he really didn't give us a strong indication of what the remand order was going to be. And when the remand order did come out, it was basically a total surprise to both parties as to what he did. I will concede that the remand order was, well, he said that there was no, this was not a products liability case. This was not a personal injury case. But he did feel that the injury arose out of the petitioner's employment. As you noted, the commission disagreed with him entirely. And when they responded to the remand order, we went back up to the circuit court. And at the time, I thought that the judge was going to take issue with the commission's order. But on the second hearing we had before the judge, he just said, I made a mistake. I'm voiding it. And that was it. Your position is, as I understand it, that because he needs the pen to perform his job, the act of reaching for the pen was something that was incidental to his assigned duties. Is that the essence? I think we get it. Okay. Thank you. Counsel, you may respond. May it please the court. Good morning, Justices. Counsel. My name is Christopher Jarko. I'm here on behalf of the appellee of the city of Chicago. Your Honor, as Justice Harris pointed out, this is a unique case procedurally. The commission had an opportunity to review the facts of this case on two separate occasions and apply them to the longstanding case law in the state of Illinois. The commission had an opportunity to review the facts on review from Arbitrator O'Malley as well as on remand from the circuit court of Cook County. And on each occasion, the commission concluded that the record lacked sufficient evidence to establish that petitioner's accident arose out of his employment. Well, why is that relevant that they looked at it a second time? Which one are we reviewing? Well, I think you should look at the commission's decisions as a whole. Which decision? No, we don't. Which one are we reviewing? What's up here before us, the first or the second? I would submit that the second decision is up for review today, Judge. Oh, really? No, I think the opposite, the first. Just so you know. Okay. Well, thank you. It was the same decision. It was exactly the same. The second decision was somewhat more elaborate, more detailed. Just because they took two looks at it, does that make a difference? Well, I think that it's important to note that I think it's persuasive to the issue that they had an opportunity to look at it twice, and the fact that they reached the same conclusion twice, I think this court should look to that. It's like a review in baseball now. They look at it twice. It's better the second time around. That's exactly right. Well, should we do that with every commission decision? Well, I mean, is it really fair? We're here on the first one. Understood. Thank you, Justice. Sure. Let me hone in on what I think is the essence here. It does strike one as a little bit odd that somebody picking up a pen from the floor is a compensable injury. I mean, it seems a little strange, admittedly. However, he cites these cases, Young, where a parts inspector reaches into a box to retrieve a part for inspection. It's hurt. That's compensable. A caregiver removing a safety hazard while helping somebody in the shower is compensable. Why is this case different than those? For a few different reasons. First and foremost, the petitioner in the cases in which you allude to presented specific evidence and specific facts which allow the commission and this court to reach a determination that it was an employment-related risk. Specifically in Young, the petitioner presented evidence that the box had small dimensions in which he had to reach into. He testified that it was difficult to reach into that box. There are specific facts that linked the injury to his work activities. And, therefore, those facts are missing from this case. All we know is that Mr. Newby The act of reaching into the box was part of his assigned duties. Specifically in Young. That's what you're saying. That's correct. Picking up a pen off the floor was not specifically part of his assigned duties, was it? It was not. No judge. And, furthermore, in Autumn Ackley, which is a caregiver case which you allude to, again, there's clear, specific facts in that case which linked the injury to the claimant's work activities. Specifically, she was required to work in the bathroom of a client where she was bathing a client. She had to reach for a soap underneath the shower head which caused a dangerous environment. In this case, we know nothing about Mr. Noonan's work environment. The record is silent as to what was unique about his environment that created an increased risk or any type of employment risk. There's a very specific distinction in that matter. Can I give you a hypothetical here? Yes, absolutely. Let's change the work environment. We have a mechanic, car's on the lift, changing oil, dropping oil from the crankcase, and the wrench falls out of his hands, falls down to the garage floor, and he bends over to pick it up, and he has a back injury. Is that the same as this case? It's not the same, Your Honor. Why is that? Because in that case, the claimant would, he's performing a specific task that's unique to the job duties of a mechanic. In this case... What are the job duties here that the claimant is performing? Well, I would submit that the record is somewhat vague on what his job duties are. I think you can infer that he's a clerk, so his job is to fill out job forms. But when he's testifying, and I believe I alluded to this in my brief, he doesn't explain what those forms are for. He doesn't explain how often he has to fill them out. He doesn't explain how many he has to fill out in a given amount of time. Does that matter? Is he in the course of his employment? Is there any dispute about that? No, Your Honor. Okay. So, okay. But I think all those missing facts allude to the essence that he was simply performing an everyday task that people do in any given situation all throughout the world at any given time. This is a very... What is that task that everyday people do all the time? Well, Mr. Newton performed a couple of different tasks in this case. Perhaps it was filling out paperwork. People do that everyday throughout all walks of life. The other task in which he was specifically injured at the time, he was sitting in an office chair and reaching for a pen. So I think the sitting in the office chair and reaching for the pen are the risks that this court should analyze. That's something that the world does, the general population does in numerous and countless situations at any given time throughout the day. All right. So what you're saying is in essence is the act of reaching to the floor, the risk of falling, is something that he would have been exposed to equally apart from his work for the employer. That's exactly right. But this could have happened at home. Whereas the guy with the wrench in the garage wouldn't be exposed to normally having the power in the lift and changing the oil with a wrench unless he was working. Correct. Yes, Your Honor. And I would actually invite this court to take a close look at the case of Adcock v. Element Workers' Compensation Commission, which was decided by this body. We've taken a pretty close look at that case. We have, several times. Thank you. I appreciate that. But I think it's directly applicable to this case here. And I think this court did a very, a service where they explained, Your Honors, explained that simply by being at work performing something and with an opportunity, a job in which the employer may have anticipated the claimant to perform, that alone, when it's a mutual risk, does not create a compensable claim. Unless there's a qualitative or quantitative difference, which we don't have here. That's exactly right. It wasn't like he was required to bend over and pick something off the floor at any time of day. Correct. And Mr. Newton had an opportunity to explain all of that. He could have explained what type of flooring he was on. He could have explained that there was a problem with the chair. None of that is in the record. And so, therefore, this is certainly not an increased mutual risk, Your Honors. For these reasons and for those stated in our brief, I respectfully request that this court affirm the commission's decision as an opposite conclusion is not readily apparent. Thank you. Thank you, counsel. Counsel, you may reply. The record does show what Mr. Noonan was doing. He did explain his job duties, filling out those truck forms. And so I think it's not just something that anybody does. I think those were his specific assignments that he was fulfilling at the time of the accident. And that's why I say it was a risk related to his employment. Thank you. Very good. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement and a written disposition shall issue.